IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

METROPCS, a brand of T-MOBILE   §
USA, Inc., a Delaware Corporation,   §
  §
    Plaintiff,   §
  §
V.   §     No. 3:18-mc-29-K-BN
  §
ISAIAH MICHAEL THOMAS,   §
individually and d/b/a GO PHONEZ,   §
ZAMIR JEFFERSON, CHRISTOPHER   §
ALEXANDER T. JOHNSON, BRION R.   §
BENSON, ROLAN STEPHENS,   §
KEOSHA LAWSON, and NINA   §
STEWART,   §
  §
    Defendants.   §
  §
_____   §
  §
LORRAINE FRAZIN,   §
  §
    Movant.   §

## MEMORANDUM OPINION AND ORDER

Non-party Lorraine Frazin has filed a Motion to Quash Subpoena and for

Supplemental Relief [Dkt. No. 1 (the "Motion to Quash")] under Federal Rules of Civil

Procedure 26(c) and 45(d), directed at the subpoena for deposition duces tecum (the

"Subpoena") that T-Mobile USA, Inc., for itself and its MetroPCS brand ("MetroPCS,"

"T-Mobile," or "Plaintiff"), the plaintiff in an action pending in the United States

District Court for the Eastern District of Pennsylvania, *MetroPCS v. Isaiah Michael*

*Thomas, et al.*, No. 2:17-cv-04557-MMB (the "Underlying Matter," the "Pennsylvania

action," or the "Philadelphia suit/case/lawsuit"), served on Ms. Frazin. Ms. Frazin seeks an order quashing the Subpoena or, in the alternative, under Rule 26(c)(1), an order (i) forbidding the discovery requested by MetroPCS, (ii) limiting the scope of discovery to the facts and claims in the Underlying Matter, and/or (iii) requiring that any deposition be taken upon written questions to prevent Ms. Frazin from missing work and to substantially reduce her expenses for attorneys fees that would be involved in an oral deposition. *See* Dkt. No. 1 at 10. She also "requests that she be awarded her costs, including reasonable attorney's fees, incurred in the making of this" Motion to Quash, explaining that, because the Subpoena "was served (1) in flagrant violation of the rules, and (2) for an improper purpose, [she] requests that the Court consider the imposition of substantial additional sanctions against [MetroPCS] for flagrant abuse of federal discovery, as may be appropriate. *Id.*

MetroPCS, in turn, filed a response to the Motion to Quash and a Motion to Compel Discovery, asking the Court, under Federal Rules of Civil Procedure 26, 37, and 45 and the Local Rules of this Court, to compel Ms. Frazin to comply with the Subpoena, deny the Motion to Quash, and award MetroPCS its reasonable attorneys' fees and costs. *See* Dkt. No. 7 (the "Motion to Compel").

United States District Judge Ed Kinkeade has referred this miscellaneous action, including the Motion to Quash and the Motion to Compel, to the undersigned United States magistrate judge for hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 3.

Ms. Frazin filed a reply in support of her Motion to Quash, *see* Dkt. No. 10, and a response to the Motion to Compel, *see* Dkt. No. 13, and MetroPCS filed a reply in support of the Motion to Compel, *see* Dkt. No. 19.

Ms. Frazin also filed a Motion to Strike Sutton Declaration, *see* Dkt. No. 11 (the "Motion to Strike", asking the Court to, under Federal Rule of Evidence 103(a), strike the Declaration of Stacey K. Sutton [Dkt. No. 8] supporting the Motion to Compel, *see* FED. R. EVID. 103(a)(1) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and: (1) if the ruling admits evidence, a party, on the record: (A) timely objects or moves to strike; and (B) states the specific ground, unless it was apparent from the context....").

MetroPCS filed a response to the Motion to Strike, *see* Dkt. No. 15, and Ms. Frazin filed a reply, *see* Dkt. No. 20.

## Background

Ms. Frazin "moves this Honorable Court to quash a subpoena, attached as App'x Exhibit A, 'drop served' upon her by T-Mobile USA, Inc., which commands her to attend a deposition for a Pennsylvania case in which T-Mobile is aware that Lorraine Frazin has no relationship to the lawsuit and has no knowledge relevant to any claim or defense in that case" and contends that,

> [u]nder cover of the Pennsylvania action, T-Mobile USA, Inc. seeks to conduct unauthorized early discovery for a cause of action that it is considering filing at a later date in Dallas, Texas. When asked about the relationship between Mrs. Frazin and the Pennsylvania lawsuit, counsel for T-Mobile explained that Mrs. Frazin's son is believed to have engaged, in Dallas, in the same type of activity which is subject of the Pennsylvania suit. (App'x at 11).

Counsel for T-Mobile are aware [that] Mrs. Frazin has no information or knowledge relevant to their Pennsylvania case, and T-Mobile has judicially admitted this fact by excluding Mrs. Frazin from its Rule 26 Disclosures and list of persons likely to have discoverable information. (App'x at 13, et. seq.).

Since Mrs. Frazin has no knowledge relevant to the Pennsylvania suit, and T-Mobile's counsel know this, the deposition violates both the scope of permissible discovery under Rule 26(b) and T-Mobile's obligation under Rule 26(g) to certify that T-Mobile's discovery request is consistent with the federal rules and not interposed for an improper purpose.

The Federal Rules of Procedure do not allow conducting depositions in a case filed in one jurisdiction of deponents with no relationship to the lawsuit, for the purpose of fishing for new evidence for new suits against new parties to be filed later in other jurisdictions. That is a flagrant abuse of the discovery process.

Dkt. No. 1 at 2.

By way of background, Ms. Frazin reports that

[t]he claims involved in T-Mobile's Pennsylvania suit are similar to those filed by T-Mobile in a series of suits. In multiple suites across the country, T-Mobile has sued dozens of defendants based on claims of 'illicit' and 'unlawful' unlocking of cell phones purchased from T-Mobile.

T-Mobile wraps its claims in the cloth of vast conspiracies to engage in the illegal unlocking of cell phones purchased, (not stolen), from T-Mobile. Notably, T-Mobile consistently neglects to inform the courts that in 2014, President Barack Obama signed into law the Unlocking Consumer Choice and Wireless Competition Act. Pursuant to that law, Congress authorized cell phone owners' circumvention of technological measures that restrict wireless telephone handsets from connecting to wireless networks. 17 U.S.C. § 1201(c). In other words, unlocking cell phones purchased from T-Mobile is a lawful activity authorized by an act of Congress. *Id.*

While T-Mobile self-promotes itself as having great success with its claims since 2014, the truth is opposite. T-Mobile has requested, in serial fashion, jury trials in each of its cases but appears to have never been able to prevail in a jury or bench trial on its claims. Instead, T-Mobile has been successful only in intimidating unsophisticated defendants into defaulting or entering stipulated judgments. It appears, moreover, that when T-Mobile is able to secure stipulated judgments by consent, those judgments are "for show" and in most, if not all, such cases, T-Mobile obtains the stipulated judgments by agreeing not to enforce them.

Recently, judges are becoming aware of T-Mobile's tactics, and in recent cases, have started to rule against T-Mobile's attempts to mislead the courts with frivolous claims and arguments. See e.g., Hon. Judge Atlas' recent denial of a T-Mobile motion for Summary Judgment, (attempting to illicitly mislead the court into turning a default judgment against a defunct corporation into a summary judgment against an individual), attached at App'x page 32.

....

The Petitioner in this action, Lorraine Frazin, is not involved in any way in the Pennsylvania claims. In fact, T-Mobile has acknowledged that Mrs. Frazin has no knowledge relevant to the claims or defenses in that suit by omitting her from its Rule 26(a) Disclosures in that case. In seeking to justify taking the deposition of Mrs. Frazin under guise of the Pennsylvania suit, T-Mobile asserts that Mrs. Frazin conspired with her son to purchase T-Mobile phones in Dallas for her son to unlock and sell on the internet. Mrs. Frazin's son's friend apparently purchased about 150 cell phones, paid the full contract term, and then, as allowed by law, unlocked the phones.

Even if that happened, somehow involved Mrs. Frazin, and were actionable, that has nothing to do with the claims in the Pennsylvania case. Again, counsel for T-Mobile are well aware of this, and in its Pennsylvania Rule 16(a) Disclosures T-Mobile did not list Mrs. Frazin as an individual with discoverable information relating to the claims or defenses in that case.

T-Mobile's Rule 26 Disclosures, made on March 14, 2018, were made subsequent to the Tom Vanderbosch deposition taken in Dallas. Tom Vanderbosch is Mrs. Frazin's friend that purchased about 150 cell phones from T-Mobile (and fully paid for the full service commitment made to Tmobile at the time of purchase). When making their Rule 26 Disclosures after to taking the Vanderbosch deposition, T-Mobile did not list Tom Vanderbosch as a person with information relevant to any claim or defense in the Pennsylvania case. Thus, having deposed him, T-Mobile's counsel were fully aware that Tom, and Mrs. Frazin, did not possess any information relevant to any claim or defense in the Pennsylvania case.

Lorraine Frazin has never purchased phones from T-Mobile or unlocked cell phones. Her only relationship to cell phones is that she uses an Apple iPhone which she purchased at Walmart.

Lorraine Frazin, is not a typical subject of T-Mobile's suits, in that almost all of T-Mobile's cases are filed against minorities, the vast majority of which have Arab or middle-eastern sounding names, and for which T-Mobile, (apparently without exception), throws in allegations of

terrorism and mention of "Hezbollah", (even though none of the cases seem to involve, in any way, terrorism or Hezbollah).

At this point, there does not even appear to be any substantive issues in dispute in the Pennsylvania case since no defendant has filed an answer in that case and defaults have been entered against most of the defendants. (App'x at 26, et.seq.).

Id. at 3-6 (footnotes omitted),

MetroPCS responds that its

Motion to Compel Discovery ("Motion to Compel") and Response in Opposition to Frazin's Motion to Quash Subpoena and for Supplemental Relief ("Motion to Quash") [DE 1] arises out of an action pending in the United States District Court for the Eastern District of Pennsylvania, *MetroPCS v. Isaiah Michael Thomas, et al.*, 2:17-cv-04557-MMB. MetroPCS filed suit against seven defendants ("Defendants") because they are engaged in and knowingly conspire with others in unlawful business practices that include the unauthorized, deceptive, and fraudulent acquisition and resale of new MetroPCS wireless handsets ("MetroPCS Handsets") (the "Handset Theft and Trafficking Scheme" or the "Scheme"). See Appendix at pp. 1-45 ("Appx. at p.__") (*MetroPCS v. Isaiah Michael Thomas, et al.*, 2:17-cv-04557-MMB Complaint). MetroPCS seeks damages and injunctive relief for Defendants' violations of multiple state and federal laws. [The court recently granted final judgment and permanent injunction in favor of MetroPCS against certain defendants but the case remains pending against the others. *MetroPCS v. Isaiah Michael Thomas, et al.*, 2:17-cv-04557-MMB (E.D. Pa. April 19, 2018).]

MetroPCS uncovered evidence demonstrating that third-parties, including, inter alia, Petitioner Lorraine Frazin ("Frazin") are engaging in the identical activities described in the Complaint and are likely to have relevant information regarding the Scheme that would support the allegations of MetroPCS's Complaint and its prayer for injunctive relief and damages. See Appx. at pp. 1-45, 48 (Complaint) (Declaration of Stacey K. Sutton ("Sutton Decl.") at ¶ 5). As a result, on March 30, 2018, MetroPCS issued a subpoena duces tecum to Frazin (the "Subpoena") which commanded Frazin to appear at a deposition in Dallas, Texas, on April 19, 2018, and to produce specific categories of documents related to MetroPCS Handsets. *Id.* at p. 48 (Sutton Decl. at ¶ 6).

Frazin responded by letter through counsel. *Id.* (Sutton Decl. at ¶ 7). The letter notably avoided expressly denying that Frazin has relevant knowledge, yet demanded that MetroPCS "articulate" its reason for

seeking discovery from Frazin. *Id.* MetroPCS informed Frazin that it had uncovered evidence that Frazin and her son are participants in the Scheme to obtain and resell new MetroPCS phones, using the identical fraudulent activities described in the Complaint, and accordingly stated that it intended to proceed with depositions of both Frazin and her son. *Id.* (Sutton Decl. at ¶ 8). Frazin then waited until the evening before the deposition was scheduled to take place to file the Motion to Quash [DE 1], advise that she would not attend the deposition, and interpose improper objections to the document requests. *Id.* (Sutton Decl. at ¶ 9). MetroPCS's counsel had already traveled to Dallas, Texas by the time Frazin advised that she would not appear at the deposition. *Id.*

Dkt. No. 7 at 1-2 (footnotes omitted). "MetroPCS respectfully requests that the Court compel Frazin to produce documents and to attend and fully cooperate in her deposition, deny Frazin's Motion to Quash, and award MetroPCS its reasonable attorneys' fees and costs incurred as a result of having to move to compel, to respond to the Motion to Quash, and for Frazin's last-minute refusal to appear." *Id.* at 2.

## Legal Standards

Under Federal Rule of Civil Procedure 45, a party may serve a subpoena that commands a nonparty "to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises." FED. R. CIV. P. 45(a)(1)(A)(iii). Under Rule 45(c), "[a] subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person" and "may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of

where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(A), 45(c)(2)(A).

Federal Rule of Civil Procedure 45(a)(1)(C) provides that "[a] command to produce documents, electronically stored information, or tangible things ... may be included in a subpoena commanding attendance at a deposition." FED. R. CIV. P. 45(a)(1)(C). And Federal Rule of Civil Procedure 45(d)(2)(A) directs that "[a] person commanded to produce documents, electronically stored information, or tangible things ... need not appear in person at the place of production ... unless also commanded to appear for a deposition, hearing, or trial." FED. R. CIV. P. 45(d)(2)(A).

And, under Rule 45(a)(4), "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." FED. R. CIV. P. 45(a)(4).

The Subpoena was properly issued by the United States District Court for the Eastern District of Pennsylvania under Federal Rule of Civil Procedure 45(a), as the court where the Underlying Matter is pending. *See* FED. R. CIV. P. 45(a)(2) ("Issuing Court. A subpoena must issue from the court where the action is pending.").

The Subpoena commands Ms. Frazin to produce "documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material" on April 19, 2018 at a location in Dallas, Texas and to appear for a deposition on April 19, 2018 at a location in Dallas, Texas. *See* Dkt. No. 2. Because the

Subpoena requires compliance in Dallas, the Motion to Quash and Motion to Compel are properly filed in this Court, which, as required by Rule 45(d), is the court in the district where compliance with the Subpoenas is required. *See* FED. R. CIV. P. 45(d)(2)(B), 45(d)(3)(A); *accord CSS, Inc. v. Herrington*, No. 3:17-mc-71-N-BN, 2017 WL 4750707 (N.D. Tex. Oct. 20, 2017).

Under Federal Rule of Civil Procedure 45(d)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." FED. R. CIV. P. 45(d)(1); *see also Am. Fed'n of Musicians of the U.S. & Canada v. SKODAM Films, LLC*, 313 F.R.D. 39, 57-59 (N.D. Tex. 2015).

And Federal Rule of Civil Procedure 45(d)(2)(B) requires that "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested" – and that "[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." FED. R. CIV. P. 45(d)(2)(B).

Under Rule 45(d)(2)(B), "[i] an objection is made, the following rules apply: (i) At any time, on notice to the commanded person, the serving party may move the court

for the district where compliance is required for an order compelling production or inspection. (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *Id.* Timely serving written objections therefore suspends the non-party's obligation to comply with a subpoena commanding production of documents, pending a court order. *See* FED. R. CIV. P. 45(d)(2)(B)(ii); *Am. Fed'n*, 313 F.R.D. at 44.

And "a non-party's Rule 45(d)(2)(B) objections to discovery requests in a subpoena are subject to the same prohibition on general or boiler-plate [or unsupported] objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections." *Am. Fed'n*, 313 F.R.D. at 46 (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2004), and adopting "the explanations in *Heller* of what is required to make proper objections and how to properly respond to discovery requests"). Just as, "[a]lthough [Federal Rule of Civil Procedure] 34 governs document discovery from a party and not a non-party, *see* FED. R. CIV. P. 34(c)," "Rule 34(b)(1)'s reasonable particularity requirement should apply with no less force to a subpoena's document requests to a non-party," so too "a non-party's Rule 45(d)(2)(B) objections to those requests should be subject to the same requirements facing a party objecting to discovery under Rule 34." *Am. Fed'n*, 313 F.R.D. at 44, 46.

This means that a non-party is subject to the requirements that an objection to a document request must, for each item or category, state with specificity the grounds

for objecting to the request, including the reasons, and must state whether any responsive materials are being withheld on the basis of that objection; that an objection to part of a request must specify the part and permit inspection of the rest; that "general or so-called boilerplate or unsupported objections are improper under Rule 45(d)(2)(B)"; and that the explanations in *Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014), of what is required to make proper objections and how to properly respond to discovery requests apply equally to non-parties subject to a Rule 45 subpoena. *See Am. Fed'n*, 313 F.R.D. at 46; FED. R. CIV. P. 34(b)(2)(B)-(C).

Under Federal Rule of Civil Procedure 45(d), "[e]ither in lieu of or in addition to serving objections on the party seeking discovery, a person can 'timely' file a motion to quash or modify the subpoena" under Federal Rule of Civil Procedure 45(d)(3)(A). *In re Ex Parte Application of Grupo Mexico SAB de CV for an Order to Obtain Discovery for Use in a Foreign Proceeding*, No. 3:14-mc-73-G, 2015 WL 12916415, at *3 (N.D. Tex. Mar. 10, 2015), *aff'd sub nom. Grupo Mexico SAB de CV v. SAS Asset Recovery, Ltd.*, 821 F.3d 573 (5th Cir. 2016). Under Rule 45(d)(3)(A), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A).

Thus, "[i]n the majority of cases, a person – whether a traditional party (i.e., a plaintiff or defendant) or a non-party – waives objections if he/she/it fails either to

serve timely objections on the party seeking discovery or to file a timely motion with the court." *Grupo Mexico*, 2015 WL 12916415, at *3; *accord Am. Fed'n*, 313 F.R.D. at 43 (explaining that "[t]he failure to serve written objections to a subpoena within the time specified by Rule [45(d)(2)(B)] typically constitutes a waiver of such objections, as does failing to file a timely motion to quash." (internal quotation marks omitted)).

As another judge in this circuit has explained:

> When a non-party to a lawsuit ... is served with an overly broad subpoena duces tecum, ... the non-party has four procedural options. First, it may ignore the subpoena. This is the worst option, almost certain to result in a contempt citation under Rule 45(g) and a finding that all objections have been waived. Second, the non-party may comply with the subpoena, an option that appears to be less frequently chosen in these contentious times.
>
> Third, the non-party "**may** serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested." Fed. R. Civ. P. 45(d)(2)(B) (emphasis added). Significantly, this rule uses the permissive "may." It does not use the mandatory "shall" or "must." The non-party is not required to serve written objections. Instead, serving written objections is a less formal, easier, usually less expensive method of forestalling subpoena compliance when compared to the separate option of filing a motion to quash or modify the subpoena, as discussed below. However, if the subpoena recipient chooses to serve written objections rather than file a motion to quash or modify, the objections must be served on the issuing party "before the earlier of the time specified for compliance or 14 days after the subpoena is served." *Id.*
> ....
> Serving written objections under Rule 45(d)(2)(B) may provide the recipient with several advantages. For example, asserting objections can be done informally without going to court, shifts the burden and expense of commencing motion practice in court to the issuing party and affords the recipient additional time in the event the recipient is ultimately obligated to comply with the demands in the subpoena.
>
> The non-party's fourth option is the one that [the non-party] elected to exercise in this case. Under Rule 45(d)(3), the subpoena

recipient may move to modify or quash the subpoena as a means of asserting its objections to the subpoena. Unlike serving Rule 45(d)(2)(B) written objections, a motion to quash is <u>not</u> subject to the 14 day requirement. Instead, the rule provides simply that the motion to quash must be "timely." Fed. R. Civ. P. 45(d)(3)(A). As the leading commentators and the case law they rely upon explain, the "14-day requirement to object to a subpoena is **<u>not relevant</u>** to a motion to quash a subpoena, ..." Wright & Miller (emphasis added) and cases cited at n.10, including *COA Inc. v. Xiamei Houseware Group Co., Inc.*, No. C13-771 MJP, 2013 WL 2332347, \*2 (W.D. Wash. May 28, 2013) (quoting *King v. Fidelity Nat. Bank of Baton Rouge*, 712 F.2d 188, 191 (5th Cir. 1983)); *In re Kulzer*, No. 3:09-MC-08 CAN, 2009 WL 961229 (N.D. Ind. Apr. 8, 2009), *rev'd on other grounds Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591 (7th Cir. 2011) (motion to quash was timely even though it was not served within 14-day time limit).

....

Rules 45(d)(2) and 45(d)(3) provide a non-party subpoena recipient with two separate and distinct procedural vehicles for asserting objections to a subpoena. One is not dependent upon or tied to the other. One must be filed within 14 days of receipt; the other must merely be "timely," ordinarily meaning filed before the date set in the subpoena for compliance.

*Arthur J. Gallagher & Co. v. O'Neill*, Civ. A. No. 17-2825, 2017 WL 5713361, at \*1-\*2, \*4 (E.D. La. Nov. 27, 2017) (emphasis in original; citation omitted); *accord Monitronics Int'l, Inc. v. iControl Networks, Inc.*, No. 3:13-mc-134-L-BN, 2013 WL 6120540, at \*1 (N.D. Tex. Nov. 21, 2013) ("Rule 45 does not define a 'timely motion' but does provide that, if the subpoenaed party chooses to serve objections instead of moving to quash, '[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.' Fed. R. Civ. P. 45(c)(2)(B).").

On a Rule 45(d)(3)(A) motion to quash or modify a subpoena, the moving party has the burden of proof. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998). "Generally,

modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

On a motion asserting undue burden, "[t]he moving party has the burden of proof to demonstrate 'that compliance with the subpoena would be unreasonable and oppressive.'" *Wiwa*, 392 F.3d at 818 (quoting *Williams*, 178 F.R.D. at 109 (internal quotation marks omitted)). "The moving party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Andra Group, LP v. JDA Software Group, Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015). "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d at 818 (internal quotation marks and footnote omitted). "To determine whether the subpoena presents an undue burden, [the Court] consider[s] the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* (footnote omitted). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.* (footnote omitted); *accord Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004) ("Fed. R. Civ. P. 45 provides that a court shall quash (or modify) a subpoena if it 'subjects a person to undue burden.' Fed. R. Civ. P. 45(c)(3)(A)(iv). Whether a subpoena subjects

a witness to undue burden generally raises a question of the subpoena's reasonableness, which 'requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.' 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463 (2d ed. 1995). '[T]his balance of the subpoena's benefits and burdens calls upon the court to consider whether the information is necessary and unavailable from any other source.' *Id.*").

And, when "a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." *Williams*, 178 F.R.D. at 110. Rule 26(b)(1), as amended effective December 1, 2015, provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The Subpoena was issued by the United States District Court for the Eastern District of Pennsylvania in the Underlying Matter pending there, and the Subpoena may only properly seek testimony and documents that are relevant to any party's claim

or defense in that case. And a party may no more use third-party discovery to develop new claims or defenses that are not already identified in the pleadings than it may use discovery served on a party to find the claims themselves rather than to find support for properly pleaded claims. *See Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017).

Further, "[u]nder Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case – which are related but distinct requirements." *Id.* at 279. And discovery from a third party as permitted through a subpoena issued under Rule 45 is limited to the scope of discovery permitted under Rule 26(b)(1) in the underlying action, and "[d]iscovery outside of this scope is not permitted." *Garcia v. Professional Contract Servs., Inc.*, No. A-15-cv-585-LY, 2017 WL 187577, at *2 (W.D. Tex. Jan. 17, 2017); *see also Arthur J. Gallagher & Co.*, 2017 WL 5713361, at *2 (explaining that "subpoenas duces tecum are discovery devices governed by Rule 45 but also subject to the parameters established by Rule 26" and that a "court retains discretion to decline to compel production of requested documents when the request exceeds the bounds of fair discovery, even if a timely objection has not been made" (internal quotation marks omitted)).

In short, the provisions and structure of Rules 26 and 45 leave little doubt that the scope of permissible discovery from a third party is not broader than that permitted against a party. *See Waters v. Lincoln Gen'l Ins. Co.*, Civ. A. No. 07-3183, 2008 WL 659471, at *2 (E.D. La. Mar. 5, 2008) ("The scope of discovery with respect to non-parties under Rule 45 is no broader than that prescribed for parties under Rule

26(b)(1)."); *accord Wiwa*, 392 F.3d at 818 ("Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." (footnote omitted) (citing *Williams*, 178 F.R.D. at 109 ("The status of a witness as a nonparty entitles the witness to consideration regarding expense and inconvenience."), which cited *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) ("In addition, the status of a witness as a non-party to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience."), which FED. R. CIV. P. 45(c)(2)(B) and *Semtek Int'l, Inc. v. Merkuriy Ltd.*, No. 3607 DRH, 1996 WL 238538, at *2 (N.D.N.Y. May 1, 1996) ("Second, Lockheed is a non-party. While this status does not relieve Lockheed of its obligations either to respond to proper discovery requests or to comply with the applicable rules, it does entitle Lockheed to consideration regarding expense and inconvenience.")))); *cf. Am. Fed'n*, 313 F.R.D. at 45 ("The Court finds that applying the standards of Rule 26(b)(1), as amended, to the Subpoena and [the plaintiff's] motion to compel is both just and practicable where [a party] is not entitled to enforce its Subpoena against a non-party based on a greater scope of relevance than should apply to any discovery against any party going forward.").

Because "[t]he scope of discovery is the same under both Federal Rules of Civil Procedure 45 and 26," *Garcia*, 2017 WL 187577, at *2, the Court may properly apply the Rule 26(b)(1) proportionality factors in the context of a Rule 45(d)(3)(A) motion to quash or a Rule 45(d)(2)(B)(i) motion to compel or, for that matter, in the context of Rule 45(d)(1)'s duty to avoid imposing undue burden or expense on a person subject to

the subpoena, *see Am. Fed'n*, 313 F.R.D. at 44-45. And, as another judge in this circuit has noted, where "'non-parties have greater protections from discovery,'" "'burdens on non-parties will impact the proportionality analysis.'" *Hume v. Consolidated Grain & Barge, Inc.*, Civ. A. No. 15-935, 2016 WL 7385699, at *3 (E.D. La. Dec. 21, 2016) (quoting E. Laporte and J. Redgrave, *A Practical Guide to Achieving Proportionality Under New Federal Rule of Civil Procedure 26*, 9 FED. CTS. L. REV. 19, 57 (2015)).

The Court also "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818 (footnote omitted). "Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date; [t]he requests are not particularized; and [t]he period covered by the requests is unlimited." *Am. Fed'n*, 313 F.R.D. at 45 (internal quotation marks omitted).

Federal Rule of Civil Procedure 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending – or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." FED. R. CIV. P. 26(c)(1). At least as to the Subpoena's deposition command, Ms. Frazin is a person from whom discovery is sought by way of a deposition to be taken in this district.

Rule 26(c)(1) authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or

discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." FED. R. CIV. P. 26(c)(1).

"'[T]he burden is upon [the party or person seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir.1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir.1978)). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). And the United States Court of Appeals for the Fifth Circuit recently explained that "[t]he federal courts have superimposed a somewhat demanding balancing of interests approach to the Rule. Under the balancing standard, the district judge must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party. Courts also weigh relevant public interests in this

analysis." *Cazorla v. Koch Foods of Mississippi, L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016) (footnotes and internal quotation marks omitted); *see also id.* at 564 ("Rule 26(d) gives [the] court wide discretion to craft flexible and nuanced terms of discovery." (footnote omitted)). The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985).

Federal Rule of Civil Procedure 37(a) generally governs motions to compel discovery, providing that, in general, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery" and "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action," FED. R. CIV. P. 37(a)(1), and further that "[a] motion for an order to a party must be made in the court where the action is pending" and "[a] motion for an order to a nonparty must be made in the court where the discovery is or will be taken," FED. R. CIV. P. 37(a)(2).

But Rule 37(a) does not, by its terms, address a motion to compel a party or nonparty to appear for a deposition. *See* FED. R. CIV. P. 37(a). The only recourse expressly provided under the Federal Rules for a party seeking another party's deposition is to properly notice the deposition and file a motion under Federal Rule of Civil Procedure 37(d)(1)(A) if and when the deponent fails to appear. *See generally Robinson v. Dallas Cty. Cmty. Coll. Dist.*, No. 3:14-cv-4187-D, 2016 WL 1273900, at *2 (N.D. Tex. Feb. 18, 2016).

Rule 37(d)(1)(A) provides that "[t]he court where the action is pending may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent – or a person designated under Rule 30(b)(6) or 31(a)(4) – fails, after being served with proper notice, to appear for that person's deposition." FED. R. CIV. P. 37(d)(1)(A)(i). "[T]he law is far from settled, in this jurisdiction or elsewhere, on whether Rule 37(d) applies to a non-party witness, including expert witnesses." *Lovison v. Gleason*, No. 3:14-cv-1517-P, 2015 WL 3934933, at *6 (N.D. Tex. June 26, 2015) (collecting cases) "[B]efore being compelled to testify, [a non-party] must be served with a subpoena pursuant to Federal Rule of Civil Procedure 45." *Karakis v. Foreva Jens Inc.*, No. 08-61470, 2009 WL 113456, at *1 (S.D. Fla. Jan. 19, 2009) (citing authorities). But "[a] party need not comply with Rule 45 and issue a subpoena if a non-party will consent to having his deposition taken by notice alone." *Morawski v. Farmers Tex. Cty. Mut. Ins. Co.*, No. 3:14-mc-21-D-BN, 2014 WL 717170, at *1 (N.D. Tex. Feb. 25, 2014).

Once a deponent has appeared for a deposition, Federal Rule of Civil Procedure 37(a)(3)(B)(i) governs a motion to compel a deponent – whether a party or a non-party – to answer a question. *See* FED. R. CIV. P. 37(a)(2)(B)(i) ("A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: (i) a deponent fails to answer a question asked under Rule 30 or 31...."). Under Rule 37(a)(2), such "[a] motion for an order to a party must be made in the court where the action is pending," while "[a] motion for an order to a nonparty must be made in the court where the discovery is or will be taken." FED. R. CIV. P. 37(a)(2).

Federal Rule of Civil Procedure 45(g) provides that "[t]he court for the district where compliance is required – and also, after a motion is transferred [under Federal Rule of Civil Procedure 45(f)], the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." FED. R. CIV. P. 45(g). And Federal Rule of Civil Procedure 37(b)(1) provides: "If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court. If a deposition-related motion is transferred to the court where the action is pending, and that court orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of either the court where the discovery is taken or the court where the action is pending." FED. R. CIV. P. 37(b)(1).

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of

expenses unjust." FED. R. CIV. P. 37(a)(5)(A); *accord Washington v. M. Hanna Const. Inc.*, 299 F. App'x 399, 402 (5th Cir. 2008).

Federal Rules of Civil Procedure 37(a)(5)(B) and 37(a)(5)(C) further provide in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C); *accord De Angelis v. City of El Paso*, 265 F. App'x 390, 398 (5th Cir. 2008).

The Federal Rules of Civil Procedure require that attorneys or unrepresented parties comply with the rules' limits on the scope of discovery requests. Rule 26(g) provides:

> (g) Signing Disclosures and Discovery Requests, Responses, and Objections.
>> (1) Signature Required; Effect of Signature. Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name – or by the party personally, if unrepresented – and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

(A) with respect to a disclosure, it is complete and correct as of the time it is made; and

(B) with respect to a discovery request, response, or objection, it is:

(i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

....

(3) Sanction for Improper Certification. If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

FED. R. CIV. P. 26(g)(1), 26(g)(3).

"Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." Fed. R. Civ. P. 26(g) advisory committee's note (1983). Rule 26(g) specifically "requires that parties make a reasonable inquiry before conducting or opposing discovery." *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 448 (5th Cir. 1992). Rule 26(g) "provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection" and whether it is consistent with the Federal Rules of Civil Procedure and "grounded on a theory

that is reasonable under the precedents or a good faith belief as to what should be the law." Fed. R. Civ. P. 26(g) advisory committee's note (1983). "This standard is heavily dependent on the circumstances of each case." *Id.*

"Although the certification duty requires the lawyer to pause and consider the reasonableness of his request, response, or objection, it is not meant to discourage or restrict necessary and legitimate discovery. The rule simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." *Id.* "'The duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by [Federal Rule of Civil Procedure] 11.... Ultimately what is reasonable is a matter for the court to decide on the totality of the circumstances.'" *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 686 (5th Cir. 1989) (quoting Fed. R. Civ. P. 26(g) advisory committee's note (1983)).

By signing discovery requests, the attorney or party serving discovery requests makes an affirmative certification that the requests are not unreasonable or unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action. If the requests nevertheless fall outside the Rule 26(b)(1) scope of discovery, the serving attorney or party may face Rule 26(g)(3) sanctions if it made the certification without substantial justification. *See* FED. R. CIV. P. 26(g)(1)(B), 26(g)(3); *Heller*, 303 F.R.D. at 475-77 ("Rule 26(g) is thus designed to curb discovery abuse by explicitly encouraging

the imposition of sanctions. Because of the asserted reluctance to impose sanctions on attorneys who abuse the discovery rules, Rule 26(g) makes explicit the authority judges now have to impose appropriate sanctions and requires them to use it. But, even if an attorney violates Rule 26(g)(1), a court may not – on a party's motion or sua sponte – impose Rule 26(g)(3) sanctions unless the certification violated Rule 26(g)(1) without substantial justification. The United States Supreme Court has defined 'substantially justified' to mean justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person. 'Substantial justification' entails a reasonable basis in both law and fact, such that there is a genuine dispute ... or if reasonable people could differ [as to the appropriateness of the contested action]. Where Rule 26(g)(3) requires the Court to impose an appropriate sanction, [t]he nature of the sanction is a matter of judicial discretion to be exercised in light of the particular circumstances. Although Rule 26(g)(3) sanctions are mandatory, Rule 26(g)(3)'s mandate ... extends only to whether a court must impose sanctions, not to which sanction it must impose." (citations, internal quotation marks, and emphasis omitted)); *see also Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 205 (5th Cir. 2016) (explaining, in the context of Rules 26(g)(1)(A) and 26(g)(3), that "[s]ubstantial justification for the failure to make a required disclosure has been regarded as justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure [obligation]" and that "[t]he attorney's decision to refrain from disclosing the information must have had a reasonable basis both in law and fact" (internal quotation marks and citations omitted)); *Schlafly v. Caro-Kann*

*Corp.*, 155 F.3d 565, 1998 WL 205766, at *3 (Fed. Cir. Apr. 28, 1998) (explaining that a party requesting discovery under Rule 34 "has the burden to state his discovery requests with reasonable particularity and not to make unreasonably cumulative or duplicative requests such that the burden or expense of complying with the requests outweighs their likely benefit").

At least one judge in this district has applied Rules 26(g)(1) and 26(g)(3) to a subpoena issued by a party's attorney, explaining that, "[b]ecause attorneys use subpoenas to further discovery, sanctions in the subpoena context often implicate the sanction provisions in both Rules 26 and 45" and that the Court would "draw[] on both Rules here because [the party's attorney] sought early discovery from the [third parties] via subpoenas." *Mick Haig Prods., e.K. v. Does 1-670*, No. 3:10-cv-1900-N, 2011 WL 5104095, at *3 (N.D. Tex. Sept. 9, 2011).

## Analysis

### I.    The rules and law that govern the motions

As a preliminary matter, Rule 45(d)(2)(B)(i), not Rule 37(a), governs MetroPCS's motion to compel Ms. Frazin to comply with the Subpoena. Rule 37(a) generally does not apply to motions to enforce a subpoena against a third party. More specifically, because Rule 37(a) does not authorize a motion to prospectively compel a non-party (or, for that matter, a party) to appear for a deposition, and because Ms. Frazin did not appear and fail to answer a question asked under Rule 30, there are no grounds for a motion under Rule 37(a) here. "For its part, FRCP 45(d)(2)(B) addresses only objections to, and motions to compel compliance with, subpoenas commanding document

productions or inspections" and therefore does not authorize a motion to compel a non-party's compliance with a subpoena's command to appear for a deposition. *Traut v. Quantum Servicing, LLC*, No. 3:18-mc-14-D-BN, 2018 WL 1035134, at *8 (N.D. Tex. Feb. 23, 2018).

MetroPCS invokes Rule 37(a)(1), which provides: "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). But, as the Court has recently concluded and "as explained above, neither that general provision nor any specific provision elsewhere in Rule 37 or 45, as laid out above, authorizes a motion to require a non-party to appear for a deposition." *Traut*, 2018 WL 1035134, at *8.

Ms. Frazin timely filed her Rule 45(c)(3)(A) Motion to Quash the day before the deposition and document production were required by the Subpoena, and the Court then stayed further compliance pending the Motion to Quash's resolution. *See* Dkt. Nos. 1 & 4. "While 'timely' is not defined in the rule nor elaborated upon in the advisory committees notes ..., [i]n general, courts have read 'timely' to mean within the time set in the subpoena for compliance." *Grupo Mexico*, 2015 WL 12916415, at *3 (quoting *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 278 (D.D.C. 2002) (citations omitted), and citing *Estate of Ungar v. Palestinian Authority*, 451 F. Supp. 2d 607, 610 (S.D.N.Y. 2006) ("It is well settled that,

to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena.")).

Relying on decisions applying Rule 37(d), MetroPCS asserts that Ms. "Frazin's nonappearance at her deposition was not excused because, due to Frazin's last-minute motion, the Court's Order staying compliance with the subpoena pending the resolution of the Motion to Quash was entered after Frazin's unexcused non-appearance. *Compare* [DE 4] entered on April 19, 2018 at 1:20 PM CDT, with Appx. at p. 48 (Sutton Decl. at ¶ 6), requiring compliance at 9:00 am CDT on April 19, 2018." Dkt. No. 7 at 4 (citing "*Barnes v. Madison*, 79 Fed. Appx. 691, 707 (5th Cir. 2003) (affirming that failure to appear was not substantially justified when deponent filed motion for protective order on the Friday preceding her Monday morning deposition, reasoning that based on timing she could 'hardly have expected in good faith to receive a court order excusing her attendance'); *King v. Fidelity Nat'l Bank of Baton Rouge*, 712 F.2d 188, 191 (5th Cir. 1983)").

Again, the law is far from settled that, despite referring to "a party or a party's officer, director, or managing agent – or a person designated under Rule 30(b)(6) or 31(a)(4)," Rule 37(d)(1)(A)(i) can apply to a third-party witness like Ms. Frazin. *Compare Barnes*, 79 F. App'x at 707 (applying Rule 37(d) to a plaintiff who failed to appear for a deposition after being served with a notice of deposition); *King*, 712 F.2d at 191 (applying Rule 37(d) to parties to a bankruptcy proceeding who were served with subpoenas to compel their attendance at an examination as to their financial affairs). As the Court has recently observed, "Rule 37(d)(1)(A) by its terms only authorizes

motions for sanctions for failing to appear for a properly noticed deposition to be heard by '[t]he court where the action is pending,'" and "[t]hat lends support to a conclusion that Rule 37(d)(1) does not apply to failures by nonparty deponents to comply with Rule 45 subpoenas commanding the deposition of a nonparty, where, as noted above, Rule 45's provisions governing subpoenas for nonparty discovery directs that subpoena-related motions must be filed in 'the court for the district where compliance is required'" "[a]nd Rule 37(a)(2) likewise dictates that '[a] motion for an order [compelling discovery or disclosure] to a nonparty must be made in the court where the discovery is or will be taken.'" *Traut*, 2018 WL 1035134, at *9 (citations omitted; quoting FED. R. CIV. P. 37(a)(2), 37(d)(1)(A), 45(d)(1), 45(d)(3)(A), 45(d)(3)(B), 45(e)(2)(B), 45(g)).

But, even if Rule 37(d)(1)(A)(i) could apply to Ms. Frazin, Rule 37(d)(2) provides that "[a] failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." FED. R. CIV. P. 37(d)(2). Ms. Frazin filed her Motion to Quash, seeking a Rule 26(c) protective order in the alternative, the day before the April 19, 2018 deposition commanded by the Subpoena. And, while that may only protect her from Rule 37(d)(1)(A) sanctions, MetroPCS does not actually invoke Rule 37(d)(1)(A)(i) or seek sanctions under that provision, and "the only mechanism under the Federal Rules available to [MetroPCS] appears to be Rule 45(g)'s provision that '[t]he court for the district where compliance is required ... may hold in contempt

a person who, having been served, fails without adequate excuse to obey the subpoena.'" *Traut*, 2018 WL 1035134, at *9 (quoting FED. R. CIV. P. 45(g)).

Ms. Frazin perhaps could and should have filed the Motion to Quash sooner than the day before the date on which compliance was required. *See generally Talon Transaction Techs., Inc. v. StoneEagle Servs., Inc.*, No. 3:13-cv-902-P, 2014 WL 6819846, at *2-*3 (N.D. Tex. Dec, 4, 2014). Nevertheless, the Court finds that the Motion to Quash was timely filed under Rule 45(c)(3)(A) under the circumstances.

Neither Ms. Frazin nor MetroPCS has filed an affidavit or certificate of service, *see* Dkt. Nos. 2 & 8, but MetroPCS's counsel attests that the Subpoena issued on March 30, 2018, that Ms. Frazin responded to MetroPCS on April 10, 2018 by letter (sent via email) through her counsel, and that MetroPCS responded to Ms. Frazin on April 16, 2018 by letter (sent via email) through its counsel, *see* Dkt. No. 8 at 50 of 102. Under these circumstances, Ms. Frazin timely filed the Motion to Quash on April 18, 2018. *Accord Arthur J. Gallagher & Co.*, 2017 WL 5713361, at *3, *4 ("The return date provided in the subpoena for production of the documents was June 21, 2017. Marsh's motion to quash was filed on June 7, 2017, Record Doc. No. 10, two weeks before the return date. The motion was therefore timely within the meaning of Rule 45(d)(3)(A) and preserved Marsh's objections. Marsh did not employ the less formal alternative procedural option of serving written objections. Therefore, the 14-day period for filing objections to the subpoena was irrelevant and provides no support for Gallagher's waiver argument. .... In this case, Marsh properly asserted its objections in a timely motion to quash under Rule 45(d)(3), choosing not to employ the separate Rule 45(d)(2)

procedure. Its objections were not waived." (emphasis omitted)); *Nasufi v. King Cable, Inc.*, No. 3:15-cv-3273-B, 2017 WL 3334110, at *6 (N.D. Tex. Aug. 4, 2017) ("As an initial matter, DComm timely filed its Motion to Quash under Rule 45(d)(3)(A) on June 2, 2017, three days before the June 5, 2017 compliance date."); *Bell Inc. v. GE Lighting, LLC*, No. 6:14-cv-00012, 2014 WL 1630754, at *9-*10 (W.D. Va. Apr. 23, 2014) (surveying cases finding Rule 45(d)(3)(A) motions untimely when filed months after a subpoena's service or after its date for compliance).

Ms. Frazin's having timely filed the Motion to Quash, and the Court's having stayed compliance with the Subpoena (albeit on the day of the commanded deposition), the facts here would not justify civil contempt under Rule 45(g) – that is, the circumstances here do not present facts to show that Ms. Frazin, "having been served, fail[ed] without adequate excuse to obey the subpoena." FED. R. CIV. P. 45(g).

But, although MetroPCS's Motion to Compel does not properly present the issue of whether Ms. Frazin should be required to appear for a deposition, Ms. Frazin herself seeks the mirror image relief under Rule 45(d)(3)(A) of quashing the Subpoena's deposition command – and that properly presents the issue of whether she should be required to appear for her deposition. And, although both motions focus more attention on the Subpoena's deposition command, both the Rule 45(d)(3)(A) Motion to Quash and Rule 45(d)(2)(B)(i) Motion to Compel properly present the issue of whether Ms. Frazin must comply with the Subpoena's documents requests.

## II.    Ms. Sutton's Declaration

But before getting to that, the Court must address Ms. Frazin's Motion to Strike.

In support of its Motion to Compel and response to Ms. Frazin's Motion to Quash,

MetroPCS filed the Declaration of Stacy K. Sutton, in which Ms. Sutton attests:

> I, Stacey K. Sutton, having personal knowledge of the matters set forth below, declare and state the following:
>
> 1. I am over the age of 18 and am otherwise sui juris. I am a shareholder in the Carlton Fields Jorden Burt, P.A. law firm ("Carlton Fields"), representing Plaintiff MetroPCS, a brand of T-Mobile USA, Inc. ("Plaintiff" or "MetroPCS").
>
> 2. This Declaration is based on my personal knowledge or a review of documents created and maintained by Carlton Fields in the ordinary course of business.
>
> 3. This Declaration is submitted in support of MetroPCS's Motion to Compel Discovery ("Motion to Compel") and Response in Opposition to Petitioner's (Lorraine Frazin) Motion to Quash Subpoena and for Supplemental Relief ("Motion to Quash") [DE 1] and Incorporated Memorandum of Law.
>
> 4. MetroPCS filed the underlying lawsuit against seven defendants ("Defendants") because they are engaged in and knowingly conspire with others in unlawful business practices as described in the Complaint in the underlying action.
>
> 5. During discovery, MetroPCS learned from non-party deponent Tom Vanderbosch that third parties, including among others Lorraine Frazin ("Frazin"), are believed to have knowledge of the activities described in the Complaint. True and correct excerpts from the Deposition of Tom Vanderbosch are attached as Exhibit 1.
>
> 6. On March 30, 2018, MetroPCS issued a subpoena duces tecum to Frazin (the "Subpoena") which commanded Frazin to appear at a deposition in Dallas, Texas, on April 19, 2018, and to produce specific categories of documents related to MetroPCS Handsets. A true and correct copy of the Subpoena is attached as Exhibit 2.
>
> 7. On April 10, 2018, Frazin responded to MetroPCS by letter (sent via email) through her counsel. A true and correct copy of Frazin's April 10, 2018 letter is attached as Exhibit 3.
>
> 8. On April 16, 2018, MetroPCS responded to Frazin by letter (sent via email) through its counsel. A true and correct copy of MetroPCS's April 16, 2018 letter is attached as Exhibit 4.

9. On April 18, 2018, after close of business, Frazin's counsel wrote to MetroPCS advising that Frazin would not attend her deposition the following day. A true and correct copy of Frazin's April 18, 2018 e-mail is attached as Exhibit 5.

10. MetroPCS's counsel had already traveled to Dallas by the time Frazin advised that she would not appear at the deposition.

11. Lorraine Frazin's son, Jason Frazin, was also served with a deposition subpoena in this case and similarly waited until the night before his deposition to notify MetroPCS's counsel that he would not attend his deposition.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 3rd day of May, 2018.

Dkt. No. 8 at 49-51 of 102.

28 U.S. Code § 1746 provides that,

[w]herever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1)  If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date)."

Under Section 1746, the United States Court of Appeals for the Fifth Circuit has held that "[d]eclarations ... that are dated and made on penalty of perjury ... constitute '[]adequate summary judgment evidence.'" *Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir. 2017) (quoting *Stewart v. Guzman*, 555 F. App'x 425, 431 (5th Cir. 2014) (per

curiam)); *see also Garcia v. U Pull it Auto & Truck Salvage, Inc.*, No. 3:14-cv-3655-BN, 2016 WL 427382, at *1 (N.D. Tex. Feb. 4, 2016) ("An affidavit or declaration, made under penalty of perjury pursuant to 28 U.S.C. § 1746, can adequately support a motion for summary judgment when it is made on personal knowledge and shows that the affiant or declarant is competent to testify on the matters stated. *See* FED. R. CIV. P. 56(c)(4).").

Ms. Sutton's dated and signed declaration "under penalty of perjury" likewise meets Section 1746's requirements for purposes of these third-party discovery motions.

"Further, '[a]n affidavit can adequately support a motion for summary judgment when the affiant's personal knowledge is based on a review of her employer's business records and the affiant's position with the employer renders her competent to testify on the particular issue which the affidavit concerns.'" *TFHSP, LLC Series 10147 v. U.S. Bank Nat'l Ass'n*, No. 3:14-cv-2589-M-BN, 2015 WL 9591369, at *4 (N.D. Tex. Dec. 4, 2015) (quoting *Kittler v. GMAC Mortg., LLC*, No. H-12-0902, 2013 WL 3294036, at *4 (S.D. Tex. June 28, 2013)), *rec. adopted*, 2015 WL 9593624 (N.D. Tex. Dec. 31, 2015).

Ms. Frazin urges the Court to strike Ms. Sutton's declaration, explaining:

> Rule 602 of the Federal Rules of Evidence provides that "[a] witness may testify to a matter only if evidence is introduced ... that the witness has personal knowledge of the matter". As explained in the Advisory Committee notes for Rule 602, the rule requires that a witness who testifies to a fact "must have had an opportunity to observe, and must have actually observed the fact". Likewise, Rule 802 of the Federal Rules of Evidence provides that hearsay is not admissible unless a statute or rule provides otherwise.
> Rule 1002 of the Federal Rules of Evidence, (the 'Best Evidence' rule), provides that where the contents of a document are material, "[a]n original writing ... is required in order to prove its content".

....

Instead of being based upon Ms. Sutton's personal knowledge, her declaration is based upon personal knowledge "or a review of documents created and maintained by Carlton Fields in the ordinary course of business".

Since Ms. Sutton states that the statements in her declaration may be based on the documents created by Carlton Fields, she has not met the standard required by Fed. R. Evid. 602, which requires a showing that the witness has personal knowledge of the matters.

Further, statements of what is contained in the records of Carlton Fields are inadmissible hearsay. Likewise, statements as to the contents of documents created and maintained by Carlton Fields violate Fed. R. Evid. 1002, which requires admission of the original writings to prove their contents. Thus, when Sutton testifies to matters learned from review of documents, she is both offering hearsay – sharing the contents of unknown documents, and purporting to testify to the contents of those documents.

Dkt. No. 11 at 2-3 (footnote omitted). Ms. Frazin contends that Ms. "Sutton's failure to meet the legal requirements is particularly troubling because of the litany of misrepresentations contained in the Declaration." *Id.* at 3. According to Ms. Frazin, "[a]t best, the declaration is a vehicle for Ms. Sutton to improperly attest falsely to matters clearly outside of her personal knowledge, for example, falsely attesting that 'Jason Frazin, was also served with a deposition subpoena.'" *Id.* (footnoted omitted).

Ms. Frazin also challenges the declaration's compliance with Section 1746, asserting that

Sutton's declaration also appears specifically crafted to provide openings for non-culpability using the 'to the best of my knowledge' ploy, as follows: 28 U.S.C. § 1746 requires that an unsworn declaration be "subscribed by him, as true under penalty of perjury". The statute explicitly sets forth language of declaration that must be substantially complied with, to wit:

"I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

Sutton, however, chose not to comply with the statutory requirements and statutory language, and instead declared "that the foregoing is true and correct to the best of my knowledge".

If Ms. Sutton had complied with 28 U.S.C. § 1746 and declared under penalty of perjury that "True and correct excerpts from the Deposition of Tom Vanderbosch are attached as Exhibit 1", she would have had to first examine the excerpts attached as Exhibit 1, and confirm that they were indeed "true and correct".

Ms. Sutton, however, swore to something else, ('the best of my knowledge'), and apparently did not examine Exhibit 1. Accordingly, Sutton was able to falsely attest that Exhibit 1 is a "true and accurate excerpt" when it is not. Exhibit 1 is, in fact, an edited copy of the excerpts containing substantial redactions.

*Id.* at 4 (footnotes omitted).

"Based on the foregoing, Lorraine Frazin respectfully moves the Court to strike the declaration of Stacey K. Sutton because the Sutton declaration fails to establish that it is based on personal knowledge and fails to comply with the requirements of admissibility set out by the Federal Rules of Evidence." *Id.* at 5.

The Court will not do so.

First, Ms. Frazin only challenges the completeness – based on redactions and excerpting – of the transcript attached as Exhibit 1, not its accuracy.

Second, the Court's determination of the Motion to Quash and Motion to Compel do not depend on whether Jason Frazin was served with a subpoena that is not the subject of the motions pending here (and, in fact, is the subject of a separate proceeding in this district, No. 3:18-mc-37-S (N.D. Tex.)).

Third, in the context of summary judgment motions, courts in this circuit have found an unsworn declaration to substantially comply with Section 1746 by including the statement that "I declare under penalty of perjury that the foregoing is true and

correct to the best of my knowledge and belief." *Sukup v. Martin*, No. 1:10-cv-190, 2012 WL 929058, at *1 (E.D. Tex. Mar. 16, 2012); *accord Steward v. Abbott*, 189 F. Supp. 3d 620, 627-28 (W.D. Tex. 2016) ("Defendants precede their standing arguments with a threshold argument: that the Court, in assessing Plaintiffs' standing, should 'ignore' the declarations that Plaintiffs submitted in opposition to Defendants' motion to dismiss because the declarations were made out, 'under the penalty of perjury[,]' to be 'true and correct to the best of [the declarants'] knowledge.' The declarations in this case, which Defendants urge the Court to 'ignore,' do contain the operative language of Section 1746, and no authority relied upon by Defendants supports their position that the qualifying phrase 'to the best of my knowledge' invalidates a declaration that is otherwise valid under Section 1746. Rather, the cases Defendants cite addressed a series of purported affidavits or declarations and rejected them where – in the absence of any mention of perjury – they were verified only by the declarant's statement to the effect that the contents were true to the best of the declarant's knowledge. In other words, those cases held, quite plainly, that unsworn declarations are insufficient if not phrased in a manner that subjects the declarant to the penalty of perjury." (citations omitted)); *Bazemore v. Castaneda*, No. EP-10-CV-403-DB-DCG 2011 WL 1675416, at *5 (W.D. Tex. Apr. 12, 2011) (concluding that Section 1746's requirements were met where a "declaration ends with the following statement above his signature: 'I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on this 7th day of March, 2011.'").

The Court is persuaded by these decisions' reasoning that Ms. Sutton's "declar[ing] under penalty of perjury that the foregoing is true and correct to the best of my knowledge" meets Section 1746's requirements.

Fourth, just as this Court has concluded that an affidavit can adequately support a motion for summary judgment as Federal Rule of Civil Procedure 56(c)(4) requires when the affiant's personal knowledge is based on a review of her employer's business records and the affiant's position with the employer renders her competent to testify on the particular issue which the affidavit concerns, Ms. Sutton's as counsel for MetroPCS can similarly meet Rule 602's personal knowledge requirement.

Fifth, Ms. Frazin's non-specific hearsay and Rule 1002 objections are not well taken. Ms. Sutton's declaration attaches the documents on which she relies, and the Court determines they are not inadmissible for these purposes. *Accord* Dkt. No. 15 at 4 ("The motion to strike does not mention or object to the correspondence attached to the Declaration as Exhibits 3, 4, and 5, and Frazin cannot dispute that these communications between counsel are true and correct copies of the originals as the correspondence was sent to/received from Frazin's attorney. The subpoena (Declaration Exhibit 2) is also not mentioned or objected to in the motion to strike, likely because an identical copy of the subpoena was previously filed by Frazin, precluding any objection she may have to its authenticity. In addition, Frazin admits being served with the subpoena, and there is no dispute regarding its contents." (citations omitted)).

As MetroPCS notes, Ms. Sutton's declaration "simply serves as a vehicle to attach documents related to the underlying discovery dispute, the contents of which,

-39-

apparently, are not in dispute, including: (i) a deposition excerpt on which MetroPCS relied in good faith in issuing the subpoena to Frazin (Declaration Exhibit 1); (ii) the subpoena (Declaration Exhibit 2); and (iii) correspondence between counsel for Frazin and counsel for MetroPCS (Declaration Exhibits 3, 4, and 5)." Dkt. No. 15 at 3.

And, in fact, Ms. Frazin explains in reply that, "[w]ith respect to the exhibits attached to the Sutton declaration, [she] has not objected to the exhibits because the exhibits directly controvert the arguments and representations of T-Mobile." Dkt. No. 20 at 6 (footnote omitted). But, according to her reply, Ms. "Frazin objects to the statements made in Sutton's declaration, which extend well beyond the authentication of documents, because the Sutton declaration failed to establish that her statements were based on personal knowledge and therefore failed to satisfy the requirements of Rule 602." *Id.* at 8.

The Court is not persuaded. Disregarding any unmade objections to the declaration's exhibits then, and the irrelevant statements about a subpoena served on Jason Frazin, the Court finds no basis to strike or disregard Ms. Sutton's statements that:

- "MetroPCS filed the underlying lawsuit against seven defendants ... because they are engaged in and knowingly conspire with others in unlawful business practices as described in the Complaint in the underlying action."
- "During discovery, MetroPCS learned from non-party deponent Tom Vanderbosch that third parties, including among others Lorraine Frazin ('Frazin'), are believed to have knowledge of the activities described in the Complaint."
- "On March 30, 2018, MetroPCS issued a subpoena duces tecum to Frazin (the 'Subpoena') which commanded Frazin to appear at a deposition in Dallas, Texas, on April 19, 2018, and to produce specific categories of documents related to MetroPCS Handsets."

- "On April 10, 2018, Frazin responded to MetroPCS by letter (sent via email) through her counsel."
- "On April 16, 2018, MetroPCS responded to Frazin by letter (sent via email) through its counsel."
- "On April 18, 2018, after close of business, Frazin's counsel wrote to MetroPCS advising that Frazin would not attend her deposition the following day."
- "MetroPCS's counsel had already traveled to Dallas by the time Frazin advised that she would not appear at the deposition."

Dkt. No. 8 at 49-50 at 102. And neither can the Court credit any suggestion that Ms. Sutton's declaration does not, under the circumstances, properly authenticate its Exhibits 1-5 as "true and correct" copies of the deposition excerpts, subpoena, and attorney correspondence attached.

## III.   The heart of the matter

### A.   What the parties say

In her Motion to Quash, Ms. Frazin asserts that she

has zero involvement in the claims subject of the Pennsylvania lawsuit and knows nothing about the facts of that case, the actors, or the claims involved. T-Mobile does not need Lorraine Frazin's deposition for their case in Pennsylvania. There is no issue that her testimony will resolve in that suit.

T-Mobile's attempt to use the Pennsylvania case to conduct discovery in Dallas in an attempt to develop evidence to use in a new case to be filed in the future against individuals in Dallas, flagrantly violates the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(b)(1) limits the scope of discovery in a case to matters that are relevant to a party's claim or defense in that case.

Imposing upon Mrs. Frazin the burden of attendance at an oral deposition in a Pennsylvania case in which she has no part and holds no knowledge, would unfairly and improperly impose upon her the undue burden of lost work and expenses for representation of counsel at the deposition.

Dkt. No. 1 at 7-8.

She seeks not only quashal or, alternatively, a protective order but also sanctions:

> Pursuant to Fed. R. Civ. P. 26(g)(1), the signature of Respondent's counsel on the subpoena issued against Lorraine Frazin constitute a certification by Tmobile's counsel that the discovery was consistent with the Rules, including Rule 26(b)(1), and was interposed for no improper purpose, including harassment, and was neither unreasonable considering the needs of the case and the importance of the issue at stake in the action in which the subpoena was issued in.
>
> T-Mobile, (and its counsel) violated their legal duty, with respect to the subpoena subject of this motion. T-Mobile and its counsel knew that Mrs. Frazin does not have knowledge of the Pennsylvania lawsuit or the claims or defenses therein – and clearly did not list Mrs. Frazin as a person with information in their Rule 26 Disclosures in that case. T-Mobile clearly has no need for Mrs. Frazin's deposition for the Pennsylvania case.
>
> Counsel for T-Mobile admitted to the undersigned that the purported relation between Mrs. Frazin's purported knowledge and the Pennsylvania lawsuit is that T-Mobile accuses her son's friend of engaging in the same type of conduct as involved in the Pennsylvania case. (App'x at 10). Moreover, in discussing the specifics of the purported knowledge of Mrs. Frazin, counsel for T-Mobile made representations that lack candor, to wit: Counsel for T-Mobile falsely represented that Tom Vanderbosch testified in his deposition that Mrs. Frazin directed Tom to purchases phones from Tmobile and that the phones were stored in her home in Dallas. (App'x at 10-11). Upon investigation, it was discovered that T-Mobile's representations are false. Neither fact was testified to by Mr. Vanderbosch. (App'x at 12).
>
> Moreover, even if the purported facts were true, they are not relevant to any claim or defense in the Pennsylvania suit and fall well outside of the permissible scope of discovery pursuant to Fed.R.Civ.P. 26(b)(1).
>
> Pursuant to Fed. R. Civ. P. 26(g)(3), when a party's certification violates the rules without substantial justification, the Court must impose an appropriate sanction on the signer, the party on whose behalf the signer was action, or both. The sanction may include reasonable expenses, including attorney's fees caused by the improper discovery attempt. *Id.*

Dkt. No. 1 at 8-9.

MetroPCS responds that Ms. Frazin

> should be compelled to comply with the Subpoena to produce documents and appear for deposition. MetroPCS has a valid and reasonable basis for seeking discovery from Frazin because MetroPCS uncovered evidence that Frazin has knowledge of the conspiracy alleged in the Complaint. The Motion to Quash unpersuasively argues that the Subpoena is unduly burdensome because Frazin claims she does not have relevant information and the deposition would cause missed work and lawyer representation. Both of these arguments rely exclusively on unsworn self-serving, conclusory, and dubious assertions – to distract from the weakness and unsubstantiated nature of the arguments presented – and the remainder of the motion consists of desperate, spurious attacks on MetroPCS and its counsel. The mischaracterizations of the lawsuit, the facts, and the law make it clear that Frazin's general disclaimer of any knowledge cannot be relied upon. In addition, while Frazin does not specifically describe the purported burden of her particular deposition, MetroPCS took steps to minimize the burden of the deposition on Frazin, a third party, by setting it for only a half day and offering alternative dates. Frazin fails to acknowledge these accommodations, and instead is attempting to stonewall discovery in its entirety. For the reasons stated herein, MetroPCS's Motion to Compel should be granted and Frazin's Motion to Quash should be denied.

Dkt. No. 7 at 3 (footnote omitted). MetroPCS add that, "[i]mportantly, there is no declaration by Frazin in support of either of the two undue burden arguments." *Id.* at 3 n.3 (citing *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 434 (N.D. Tex. 2016) ("A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden")).

And, according to MetroPCS, the

> Subpoena was properly served, is valid, and seeks relevant information proportional to the needs of the case. Frazin has no justification for her noncompliance and her boilerplate objections fail.
> ....

The discovery sought here is both relevant and proportional to the needs of the case. As to relevance, the testimony of a non-party with knowledge about the operation of a conspiracy is clearly relevant to a case alleging the conspiracy.

The underlying action alleges Defendants' participation in an international conspiracy to defraud MetroPCS. *See* Appx. at pp. 2-3, 11 (Complaint at ¶¶ 1-4, 37). The Complaint explains that Defendants and their co-conspirators fraudulently acquire large quantities of new MetroPCS phones through co-conspirators, including runners and mules, by exploiting a port-in promotion that MetroPCS offers to provide a new phone to legitimate new customers. *Id.* at pp. 3, 12 (Complaint at ¶¶ 2, 40-42). Defendants, with no intention of complying with the terms and conditions and using fraud and deception to obtain the phones, then resell the brand new subsidized MetroPCS phones for their own benefit and to the detriment of MetroPCS, violating several laws in the process. *See id.* at pp. 25 (Complaint at ¶ 102).

Through discovery, MetroPCS learned from a co-conspirator – Tom Vanderbosch – that Jason Frazin is engaged in the Scheme to defraud MetroPCS using the identical activities described in the Complaint. *Id.* at pp. 48 (Sutton Decl. at ¶ 5). Specifically, MetroPCS learned that Jason Frazin, like the Defendants, uses numerous co-conspirators, "all [Jason Frazin's] friends and family," to obtain new subsidized MetroPCS phones and pays the runners or mules a fee per phone. *Id.* (Sutton Decl. at ¶ 5, Exhibit 1 at pp. 56:15-57:9, 64:18-70:4). Jason Frazin has even used his small children as stand-ins, to get around limits on the number of phones an individual would be permitted to obtain in one trip. *Id.* Exactly like the Defendants, Jason Frazin instructed his co-conspirators on exactly how to manipulate MetroPCS's port-in promotion, exactly which stores might be successful to hit, and which models of MetroPCS phones to obtain. *Id.* at pp. 12-14, 48 (Complaint at ¶¶ 40-44, 50) (Sutton Decl. at ¶ 5, Exhibit 1 at pp. 64:18-68:22, 72:8-73:11, 99:19-100:19). The results included over one hundred new MetroPCS phones for a single mule. *Id.* at pp. 16, 48 (Complaint at ¶¶ 61-62 ) (Sutton Decl. ¶ 5, Exhibit 1 at p. 101:24-103:5).

The co-conspirator testified in detail that he and Jason Frazin exploited the port-in promotion by activating Ting phones and porting in the newly activated phone numbers to MetroPCS, which would appear to MetroPCS to be a new activation on the MetroPCS network, leading to acquisition of a new phone under the MetroPCS promotion. *Id.* at pp. 48 (Sutton Decl. at ¶ 5, Exhibit 1 at pp. 67:9-68:22). This modus operandi is identical to that of the Defendants. *See id.* at pp. 12 (Complaint at ¶¶ 40-41).

The co-conspirator explained that many others, including all of Jason's "friends and family," assisted in fraudulently obtaining large quantities of new MetroPCS phones, leading to the reasonable inference that Frazin, as Jason Frazin's mother, with whom he lived at one time and remains is in close touch, was one of the family members in the Scheme, fraudulently obtaining new MetroPCS phones for resale. *Id.* at pp. 48 (Sutton Decl. at ¶ 5, Exhibit 1 at pp. 56:15-57:9, 64:18-70:4). The co-conspirator also testified that Frazin stores product for Jason, both at her home and her office, with the clear implication in context of the deposition being that MetroPCS phones are or have been stored in this way by Frazin. *Id.* (Sutton Decl. at ¶ 5, Exhibit 1 at pp. 45:20-23, 53:19-54:21, 144:14-145:13). Based on the foregoing, MetroPCS has a substantial basis to infer that Frazin has conspired with, assisted, aided, or abetted Jason Frazin and his co-conspirators in the Scheme also perpetrated by Defendants, or, at the very minimum, has knowledge about the Scheme.

Finally, like Defendants, Jason Frazin and/or his co-conspirators resell phones domestically for use on networks other than MetroPCS, often online, or ship the phones out of the country for their own profit and to MetroPCS's detriment. *See id.* at pp. 16, 48 (Complaint at ¶ 62) (Sutton Decl. at ¶ 5, Exhibit 1 at pp. 96:12-20, 118:22-119:7, 152:9-152:25).

The discovery MetroPCS seeks will allow MetroPCS to discover the methods Defendants, the Frazins, and other co-conspirators use to defraud MetroPCS as part of the Scheme, including how phones are obtained, stored, unlocked, and resold, and who is involved in each of the steps. *Id.* at pp. 3-4 (Complaint at ¶ 3-5). MetroPCS has learned through experience that certain actors and methods in the Scheme frequently overlap across the country – such as use of the same buyers, websites, advertisements, and unlockers – and across the world – such as shipment to the same apex purchaser amassing tens of thousands of phones for international bulk resale. This discoverable information goes directly to the allegations of MetroPCS's Complaint, as well as the calculation of its damages and foundation for injunctive relief based on substantial ongoing harm caused by the Scheme and the public interest served by a permanent injunction against Defendants. *Id.* at pp. 3-4, 21, 30, 33-34, 41, 44-45 (Complaint at ¶¶ 3-5, 76, 131, 152, 171, 191)

Dkt. No. 7 at 4-8 (footnote omitted).

MetroPCS further contends that the discovery sought is proportional to the needs of the case":

As set forth in MetroPCS's Complaint, MetroPCS has been, and continues to be, significantly damaged by the Handset Theft and Trafficking Scheme. Id. at pp. 3-4, 18, 24-25, 27, 29-30, 33-34, 36-45 (Complaint at ¶¶ 3-5, 66, 94, 99, 113, 124-126, 128, 131, 146, 149, 152, 163-65, 168, 171, 175, 178-79, 184, 187-188, 193, 199, 207, 212, 214). Several Defendants have refused to participate in the case and, therefore, MetroPCS must obtain evidence supporting its claims, damages, and entitlement to injunctive relief from other participants in the Scheme. Id.; [DE 36].

The discovery sought does not cause unusual expense that could outweigh MetroPCS's need for evidence of the Scheme. A straight-forward, half-day deposition does not present an undue burden on Frazin. *See Kiewit Offshore Servs., Ltd. v. Dresser-Rand Global Servs., Inc.*, No. 15-1299, 2016 WL 6905874, at *2 (S.D. Tex. Apr. 1, 2016) (finding the burden of a deposition is justified and proportional to the needs of the case); *Allen-Pieroni v. Sw. Corr., LLC*, No. 13-4089, 2016 WL 4439997, at *7 (N.D. Tex. Aug. 23, 2016) (Horan, J.) (same). MetroPCS already took steps to decrease any burden on Frazin, of which Frazin was aware before the no-show deposition. See Appx. at pp. 48 (Sutton Decl. at ¶ 8). Specifically, MetroPCS offered to move the date of the deposition for Frazin's convenience and MetroPCS scheduled Frazin's deposition for only a half day. *Id.* MetroPCS would have been willing to consider further accommodations, but none were requested. *Id.*

Likewise, Frazin's improper objections to the document requests should be overruled. *See id.* (Sutton Decl. at ¶ 9). The document requests are relevant and proportional to the needs of the case for the same reasons as the deposition. Frazin's objections are improper in two respects: they are boilerplate and they combine objections with the indication that Frazin possesses no documents, leaving MetroPCS in doubt as to whether she is withholding documents on the basis of objections. *See Samsung Elecs. Am. Inc.*, 2017 WL 896897, at *9.

Dkt. No. 7 at 8-9 (footnote omitted).

And MetroPCS contends that Ms. Frazin's Motion to Quash should be denied because her "request to quash the subpoena or for a protective order based on conclusory allegations of undue burden fail to satisfy the standard for either of the requested forms of relief." *Id.* at 10-14.

Finally, MetroPCS contends that an award of fees in Ms. Frazin's favor is not warranted:

> Frazin fails to demonstrate any basis for an award of fees in her favor. Frazin's only unconvincing argument is that MetroPCS and its counsel knew that Frazin had no relevant knowledge. As explained more fully above, Frazin's assertion is contradicted by sworn testimony and the reasonable inferences drawn therefrom, which provide MetroPCS's basis to believe that Frazin has information relevant to its claims. Seemingly acknowledging that the evidence points to Frazin's participation in the Scheme, through a number of mischaracterizations, Frazin attempts to assert that MetroPCS issued discovery to Frazin only for the purpose of filing a lawsuit against the Frazins. This implied admission of the existence of evidence supporting her knowledge of the Scheme only underscores the relevance of the discovery to the claims against Defendants, including as an intermediary helping to elucidate connections between Defendants, their co-conspirators, and the Frazin group. For all of the reasons described above, the Subpoena is consistent with the standards of Rule 26 and Frazin's request for fees should be denied.
>
> Finally, even if the Court were to find that discovery to Frazin should be disallowed or limited, MetroPCS's basis to subpoena Frazin was substantially justified and sanctions are, therefore, not warranted. *Heller v. City of Dallas*, 303 F.R.D. 466, 477 (N.D. Tex. 2014) (Horan, J.). If the Court grants MetroPCS's request for fees against Frazin, MetroPCS will submit a petition for its reasonable attorneys' fees and costs if the parties are unable to reach agreement. On the other hand, if the Court were inclined to award fees to Frazin, to which MetroPCS strenuously objects for the reasons set forth above, MetroPCS respectfully requests leave to brief the amount.

Dkt. No. 7 at 14-15 (footnotes and citations omitted).

MetroPCS "respectfully requests that the Court enter an order compelling Frazin to attend, fully cooperate, and produce documents at a deposition duces tecum, denying Frazin's Motion to Quash and for Supplemental Relief, awarding MetroPCS its reasonable attorneys' fees and costs incurred as a result of having to file this Motion to Compel and respond to Frazin's Motion to Quash, and for Frazin's failure to appear

at her deposition, and for any such other and further relief as this Court deems just and proper." Dkt. No. 7 at 15.

Ms. Frazin replies in support of her Motion to Quash that she "has no connection to the Philadelphia suit and has no documents responsive to T-Mobile's duces tecum request, accordingly, her motion to quash is directed at the subpoena for her oral deposition." Dkt. No. 10 at 2 (footnote omitted). As the Court has previously explained, "a non-party cannot produce what it does not have. And, so, [c]learly, the court cannot compel [a ... non-party] to produce non-existent documents." *ORIX USA Corp. v. Armentrout*, No. 3:16-mc-63-N-BN, 2016 WL 4095603, at *5 (N.D. Tex. Aug. 1, 2016) (citation and internal quotation marks omitted).

Ms. Frazin "argues that she has no involvement in or knowledge of the Philadelphia claims, that T-Mobile does not need her deposition for the claims in that suit, and that there is no issue her testimony could resolve in the Philadelphia case" and also "that attendance at an oral deposition in a case in which she has no part and holds no knowledge, would unfairly and improperly impose upon her the undue burden of attending the deposition, in addition to being outside the scope of discovery permitted by the Rules." *Id.*

According to Ms. Frazin, "[i]t is axiomatic that an oral deposition imposes a burden of time and costs of representation by counsel for represented parties," and "[i]t is also undisputed that Mrs. Frazin is represented by counsel and that T-Mobile is seeking to burden Mrs. Frazin by taking her time for an oral deposition." *Id.* at 3 (footnote omitted).

And, she adds, "[t]o the extent that the Court does not find that the oral deposition of non-parties imposes an intrinsic burden upon the individual subpoenaed for deposition, (including being unable to work during the hours necessary for the deposition appearance), Lorraine Frazin moves for leave to file a supplemental declaration establishing these facts, or to present evidence of such at a hearing before the Court." *Id.* at 3 n.4. The Court acknowledges that all discovery, including a deposition of a non-party, involves some burden and expense, but, to the extent that Ms. Frazin is asking the Court to further infer that any burden on a non-party is an undue burden, the Court denies her motion to supplement or for an evidentiary hearing. As the non-party opposing discovery, as the Fifth Circuit has held, Ms. Frazin had the burden to come forward in her Motion to Quash with evidence of an undue burden under Rule 45(d)(3)(A). *See Wiwa*, 392 F.3d at 818.

Ms. Frazin also replies that

- MetroPCS "misrepresents the Philadelphia Court's ruling as to the scope of the scheme in the Pennsylvania case";
- MetroPCS "misrepresents that the alleged Dallas 'scheme' involves the 'identical activities described in the [Philadelphia] complaint'" and that MetroPCS's "Philadelphia suit is a suit for trademark infringement" based on a core claim and allegations that "have not been made as to Mrs. Frazin, or anyone else in the purported Dallas 'scheme'";
- MetroPCS "misrepresents the content of it own Appendix," including that Ms. Frazin's attorney's "letter to TMobile 'avoided expressly denying that Frazin has relevant knowledge'" and that MetroPCS "'uncovered evidence that Frazin has knowledge of the conspiracy alleged in the Complaint,' from the Tom Vanderbosch deposition" – in which, according to Ms. Frazin, "Tom Vanderbosch's testimony does not in any way link Mrs. Frazin to the claims in the Philadelphia lawsuit"; and
- MetroPCS "frivolously argues that the Eastern District of Philadelphia's Local Rules mitigate its certification and initial disclosure obligations."

Dkt. No. 10 at 3-9 (footnotes and citations omitted).

Ms. Frazin also asserts that MetroPCS's argument that it needs Ms. Frazin's deposition is an abuse of discovery made in bad faith and that allowing MetroPCS early discovery for an unfiled case is improper and unfair. *See id.* at 9-12.

In response to MetroPCS's Motion to Compel, Ms. Frazin urges that the Court should deny the Motion to Compel (1) because MetroPCS "violated the Rules, failed to confer before filing its motion, and then lied to the Court"; (2) because "there is no evidence that Lorraine Frazin has any information within the scope of permissible discovery"; and (3) because, "if its discovery were relevant, there are substantially less burdensome means of discovery available." Dkt. No. 13 at 3-18.

According to Ms. Frazin, MetroPCS

> made a discovery certification certifying that a list of individuals constituted a correct and complete list of the individuals likely to have information relevant to the claims in the Philadelphia lawsuit on March 14, 2018. (App'x. 13, 16-20). By certifying that a list, which excluded Lorraine Frazin and Tom Vanderbosch, was a correct and complete list of individuals likely to have information relevant to the Philadelphia suit, T-Mobile established that it did not believe Lorraine Frazin was likely to have information relevant to that suit. Further, pursuant to the doctrine of judicial estoppel, T-Mobile is estopped from now 'playing fast and lose with the courts' and changing its position to claim the opposite.
> Even outside of judicial estoppel, T-Mobile has offered no evidence to establish that something has changed since its March 14, 2018 disclosures and certification to now provide an evidentiary basis to believe that Frazin is likely to have information relevant to the Philadelphia lawsuit.
> The preceding issues are not complicated. To reiterate, T-Mobile established by its discovery certifications that Lorraine Frazin is not likely to have information relevant to the claims in the Pennsylvania suit. As a legal matter, T-Mobile is estopped from now 'playing fast and lose with the courts' and changing its position to claim the opposite. Further, even if it were allowed to now change its position, T-Mobile has failed to

provide evidence to show that Mrs. Frazin is likely to have any information relevant to claims in the Philadelphia suit.

The complication in these proceedings arises because T-Mobile is not being honest with the Court. To start with, T-Mobile filed of a fraudulent certification that it conferred with opposing counsel on its motion to compel, when, in violation of the Federal Rules, it did not confer on its motion.

....

The Court should deny T-Mobile's motion to compel because in flagrant violation of the Federal Rules, T-Mobile's counsel failed to confer with opposing counsel before filing its motion, and then, in willful violation of their ethical and legal duties to the Court, lied to the Court and made a fraudulent certification.

Further, having previously certified that it disclosed all persons likely to have information relevant to its claims, and its disclosure did not include Lorraine Frazin, T-Mobile is judicially estopped from now 'playing fast and lose with the courts' and changing its position to claim the opposite. If T-Mobile could overcome the estoppel and presumption created by its discovery certifications, it has failed to offer any evidence to establish that Lorraine Frazin is likely to have knowledge relevant to any claim in the Pennsylvania lawsuit, or that the deposition of Lorraine Frazin is necessary in any way for the Pennsylvania suit.

Likewise, T-Mobile has failed to offer any evidence negating that a sworn declaration from Mrs. Frazin or a deposition upon written questions, would be sufficient for the needs of the Philadelphia case, assuming (1) there was such need – T-Mobile has presented no evidence of a need for such discovery; and (2) the discovery sought was within the permitted scope of discovery for the Pennsylvania lawsuit – T-Mobile has presented no evidence of any knowledge Mrs. Frazin is likely to have relevant to the Pennsylvania claims.

....

Based on the forgoing, T-Mobile's Motion to Compel should be in all things denied, and pursuant to Fed.R.Civ.P. 37(a)(5)(B), Lorraine Frazin should be awarded her costs incurred in investigating and defending T-Mobile's motion.

*Id.* at 2-3, 18-19 (footnote and emphasis omitted).

MetroPCS replies that it "uncovered evidence (which has been presented to the Court) demonstrating that third-parties, including, inter alia, Frazin are engaging in the identical activities described in the Complaint and are likely to have relevant

information regarding the Handset Theft and Trafficking Scheme ('Scheme') that would support the allegations of MetroPCS's Complaint and its prayer for injunctive relief and damages"; that Ms. "Frazin uses her response to rehash the same inapposite and unpersuasive arguments she has previously made to avoid the subpoena," which "is both relevant and proportional to the needs of the case and a half-day deposition is not an undue burden; and that Ms. "Frazin should be compelled to comply with the subpoena in full." Dkt. No. 19 at 1-2.

MetroPCS contends that Ms. Frazin's response, "setting aside her hyperbolic false accusations, can be distilled to one argument: that because the case is venued in Philadelphia the Scheme must be confined to Pennsylvania, and, therefore, Frazin has no relevant knowledge." *Id.* at 3 (footnote omitted). But, MetroPCS asserts, "the Scheme and conspiracy extend beyond state lines and, in fact, the defendants themselves are from three different states." *Id.*

MetroPCS further replies that Ms. "Frazin's distorted interpretation of MetroPCS's evidence, namely the Vanderbosch testimony, does not negate that MetroPCS supplied specific evidence sufficient to warrant the discovery" and that Ms. "Frazin's alternate theory of the testimony, at most, shows that this evidence (as with any evidence) might be open to more than one interpretation." *Id.*

And, MetroPCS asserts, warranted:

> [i]t appears that Frazin would ask the Court to require MetroPCS to have the evidence to prove what Frazin knows before it is allowed to depose her. MetroPCS has found no legal support for Frazin's position and Frazin advances none. In any event, such an argument belies logic. MetroPCS has established with specificity why the discovery is sought

and why the witness is anticipated to have both relevant information and information leading to the discovery of further relevant evidence.

    Likewise, Frazin's argument that MetroPCS's complaint is so detailed that discovery is therefore unnecessary is nonsensical. If true, any case that survived a Rule 12(b)(6) motion to dismiss would not require discovery. Finally, Frazin's belief in the legality of the Scheme is both wrong and completely irrelevant to MetroPCS's right to seek reasonable third-party discovery on its claims.

*Id.* at 3-4.

Finally, MetroPCS replies that its initial disclosures do not preclude Ms. Frazin's compliance with the Subpoena, where "initial disclosures are a discovery tool between the parties and are not filed or subject to reliance by third parties and where "MetroPCS did not take self-contradictory positions by omitting Frazin from its initial disclosures and then seeking discovery from her." *Id.* at 4. And MetroPCS contends that the parties conferred in good faith on the Motion to Compel, that the discovery sought from Ms. Frazin by the Subpoena is not unduly burdensome, and that supplemental briefing is not necessary or proper. *See id.* at 5-6.

B.    <u>What the Court says</u>

There is much that Ms. Frazin and MetroPCS have offered the Court to sort out here, and more than enough vitriol – all of it unhelpful – to go around.

But the Court concludes that the core of the issue here is whether Ms. Frazin's deposition testimony would be relevant to the claims and defenses in the Pennsylvania action under Rule 26(b)(1). If it would be, Ms. Frazin has not – and, the Court determines, could not – show that her appearing for a half-day deposition would be unduly burdensome under Rule 45(d)(3)(A) or disproportionate under Rules 26(b)(1).

*See* Dkt. No. 19 at 6 n.5 ("If the purported burden is related to the time of day, location, or breaks provided for the deposition, MetroPCS will make reasonable accommodations for Frazin's convenience and comfort. In fact, Frazin was previously offered alternate dates and times for her deposition.").

And the Court determines that, on this record, there is no basis to conclude that Ms. Frazin has information relevant to the claims and defenses in the Pennsylvania action under Rule 26(b)(1). MetroPCS asserts that Tom Vanderbosch is a co-conspirator of Jason Frazin, and that Ms. Frazin (Jason's mom) is involved in their scheme that is identical to the scheme alleged as the basis for claims in the Pennsylvania action. But there is nothing to suggest that Ms. Frazin or her son are actually conspiring with the defendants named in the Pennsylvania action, however similar their alleged conduct may be. That is consistent with MetroPCS's omitting Ms. Frazin for its disclosures in the Pennsylvania action.

MetroPCS is not required to be able to plead a claim against Ms. Frazin under Rule 11 standards to be able to take a deposition to explore what she knows that is relevant to the existing claims and defenses in the Pennsylvania action. And this is not a Federal Rule of Civil Procedure 56 motion for summary judgment in which the Court must draw all factual inferences in favor of the resisting party.

But requiring Ms. Frazin to sit for a third-party deposition would be unduly burdensome when MetroPCS's only basis for insisting that she do so is a witness's testimony that she may be involved in a scheme that the witness has apparently never suggested involves the defendants in the Pennsylvania action.

The Court does not find undue burden based on some proposition that, because the Underlying Matter is venued in Philadelphia, the scheme alleged in that case must be confined to Pennsylvania and that, therefore, Ms. Frazin has no relevant knowledge. The Court determines that the Subpoena should be quashed because the record does not support a determination that Ms. Frazin is likely to be able to provide deposition testimony that would be relevant to – and needed by MetroPCS to prove or support – the claims in the Pennsylvania action alleged against the defendants named there and that, under all of these particular circumstances, requiring Ms. Frazin to appear for a deposition under the Subpoena issued in connection with the Pennsylvania action would impose an undue burden on her as a non-party.

But, under all of the circumstances, the Court finds no basis to impose any sanctions in connection with any of these motion. Ms. Frazin and MetroPCS will bear their own expenses, including attorneys' fees, in connection with the motions filed here.

## Conclusion

For the reasons explained above, the Court GRANTS Non-party Lorraine Frazin's Motion to Quash Subpoena and for Supplemental Relief [Dkt. No. 1]; DENIES T-Mobile USA, Inc.'s Motion to Compel Discovery [Dkt. No. 7]; and DENIES Non-party Lorraine Frazin's Motion to Strike Sutton Declaration [Dkt. No. 11]. The Court QUASHES the subpoena for deposition duces tecum that T-Mobile USA, Inc., for itself and its MetroPCS brand, the plaintiff in an action pending in the United States District Court for the Eastern District of Pennsylvania, *MetroPCS v. Isaiah Michael Thomas, et al.*, No. 2:17-cv-04557-MMB, served on Non-party Lorraine Frazin.

SO ORDERED.

DATED: June 12, 2018

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE